[Cite as *In re M.G.*, 2023-Ohio-696.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|                         |     | JUDGES:                       |
|-------------------------|-----|-------------------------------|
| IN THE MATTER OF:       | :   | Hon. W. Scott Gwin, P.J.      |
|                         | :   | Hon. William B. Hoffman, J.   |
| M.G. (D.O.B. 12/20/07)  | :   | Hon. Patricia A. Delaney, J.  |
| J.G.  (D.O.B. 09/21/11) | :   |                               |
| M.G. (D.O.B. 06/27/13)  | :   |                               |
|                         | :   | Case No.    2022CA00131       |
|                         | :   |             2022CA00132       |
|                         | :   |             2022CA00133       |
|                         | :   | OPINION                       |


CHARACTER OF PROCEEDING:     Appeal from the Stark County Court of
                             Common Pleas, Family Court Division,
                             Case Nos. 2020JCV00724, 2020JCV00725
                             & 2020JCV00726


JUDGMENT:                    Affirmed


DATE OF JUDGMENT ENTRY:      March 7, 2023


APPEARANCES:

For-Appellant-Mother                 For-Appellee

BERNARD HUNT                         JAMES B. PHILLIPS
2395 McGinty Road N.W.               402 2nd Street S.E.
North Canton, OH 44720               Canton, OH 44702

*Gwin, P.J.*

{¶1}   Appellant-Mother appeals the September 9, 2022 judgment entry of the Stark County Court of Common Pleas, Family Court Division, terminating her parental rights and granting permanent custody of M.G.(1), J.G., and M.G.(2) to the Stark County Department of Job and Family Services ("SCDJFS").

*Facts & Procedural History*

{¶2}   B.G. is the mother ("Mother") of M.G.(1), who was born on December 20, 2007, J.G., who was born on September 21, 2011, and M.G.(2), who was born on June 27, 2013.  J.G. is the father ("Father") of the children.

{¶3}   On July 20, 2020, SCDJFS filed a complaint for dependency and/or neglect with regards to M.G.(1), J.G., and M.G.(2).  The complaint alleged in part:  the agency had previous non-court involvement with the family; in February of 2019, there were concerns that Mother and her friends were using drugs with the children around while Father was at work; Mother admitted using drugs while the children were home and was arrested; the parents agreed to a home safety plan with a grandparent supervising Mother's contact with the children; Mother continued to abuse drugs and tested positive for methamphetamines five times while the safety plan was in place; when Mother refused to follow the safety plan, Father told the agency he would make sure Mother had no unsupervised contact with the children; after the case was closed in 2019, new concerns arose in 2020 that Mother was again using drugs when the children were home and had been left unsupervised with the children; Father agreed to a safety plan with a grandparent supervising Mother's contact with the children, however, Mother would not

let the grandparent into the home; and Mother is not compliant with her criminal case probation and has active warrants for her arrest.

{¶4} The trial court held a shelter care hearing on July 21, 2020. Father appeared, and stipulated to probable cause. Mother did not appear. The court granted protective supervision of the children to SCDJFS, but placement remained with Father. A No Contact Order was put in place between Mother and the children.

{¶5} A pretrial was held on August 19, 2020, at which the guardian ad litem had concerns about the children's placement and living situation. At a pre-trial held on September 9, 2020, Father was ordered to obtain a quote for a roll-off dumpster because of the condition of the home.

{¶6} The trial court held an adjudicatory hearing on October 13, 2020. The agency deleted the allegations of neglect. Mother did not appear for the hearing. Father stipulated to a finding of dependency. In an October 14, 2020 judgment entry, the trial court found M.G.(1), J.G., and M.G.(2) were dependent children. Further, the trial court found SCDJFS made reasonable efforts to prevent the need for placement and/or make it possible for the children to return home. The court continued the placement of the children with Father, under the protective supervision of SCDJFS.

{¶7} On October 22, 2020, SCDJFS filed an ex parte motion for temporary custody due to unsafe conditions in the home and the continued violation of the No Contact Order between Mother and the children. The trial court granted the motion, and placed the children into the temporary custody of SCDJFS.

{¶8} The trial court held a hearing on October 23, 2020. In an October 26, 2020 judgment entry, the trial court found it was in the best interest of the children for temporary

custody to be granted to SCDJFS. Further, the trial court found SCDJFS made reasonable efforts to prevent the need for placement and/or make it possible for the children to return home. Specifically, the trial court noted the agency attempted services with the children in the home, but the risk was not reduced.

{¶9} The trial court held a pre-trial on June 18, 2021. In a judgment entry issued the same day, the trial court found the agency made reasonable efforts. Also, on June 18, 2021, the agency filed a motion to extend temporary custody. The trial court granted the motion after a hearing. The agency filed a second motion to extend temporary custody on November 30, 2021. The trial court granted the motion, and temporary custody to the agency was extended to July 20, 2022.

{¶10} The trial court held dispositional review hearings on December 14, 2021 and June 14, 2022. In judgment entries issued after each of these hearings, the trial court found SCDJFS made reasonable efforts to finalize the permanency plan in effect.

{¶11} SCDJFS filed a motion for permanent custody of M.G.(1), J.G., and M.G.(2) on June 14, 2022. The motion outlined the issues remaining with Mother and Father, including: Father is unwilling or unable to keep the children safe from Mother; Father failed to have an appropriate plan for supervision of the children while he is at work; and Mother continues to test positive for methamphetamines.

{¶12} On July 21, 2022, Mother and Father filed a joint motion to remove and replace guardian ad litem Christine DiPietro for bias, as she purchased Christmas gifts for the children. The trial court denied the motion after a hearing on August 9, 2022, and found the gifts were de minimis.

{¶13}  The trial court conducted a trial on SCDJFS' motion for permanent custody on August 23, 2022.

{¶14}  Zina Biehl ("Biehl") is the caseworker assigned to the children.  Biehl confirmed the children have been in the temporary custody of SCDJFS since October 23, 2020, which is more than twelve out of the past twenty-two months.  She also detailed the non-court involvement the agency had with the family since 2019 to address Mother's drug use and the home conditions of Mother and Father's home.

{¶15}  Mother's case plan required her to submit to drug screens, and to complete an assessment at CommQuest and follow through with all recommendations.  Mother initially had a no-contact order with the children because she had two warrants out for her arrest.  Biehl met with Mother several times at the beginning of the case and encouraged Mother to turn herself in.  Biehl informed Mother that, in order to start to engage in case plan services, Mother needed to take care of the warrants.  However, Mother told Biehl she was not going to turn herself in.

{¶16}  Mother was arrested on a charge of aggravated possession of drugs in April of 2021, and was sent to prison until October 21, 2021.  Mother was judicially released in October of 2021, and completed sixty days at Deliverance House.  Mother struggled to comply with services and had a conflict with her counselor while she was there.  Mother then went to Sober Living on December 23, 2021.  From January of 2022 through mid-February of 2022, Mother went to Betty's House, a sober living home, but was released due to non-compliance with house rules.  From there, Mother went to the Country Inn hotel until she was able to secure sober living at Coleman House.

{¶17} Biehl reports Mother has not consistently kept appointments with her outpatient mental health treatment providers, but has recently been attending appointments.

{¶18} Prior to April of 2021, Mother was not completing any drug screens. Upon her judicial release from prison, Mother has been on color code to complete random drug screens. In May of 2022, Mother did not show for two screens. At the end of May of 2022 and on June 1, 2022, Mother tested positive for methamphetamines. Mother has consistently tested positive for marijuana, and Mother lasted tested positive for marijuana on August 10, 2022. Biehl testified that after two years, Mother is unable to demonstrate sobriety.

{¶19} Biehl stated that Mother has gone for a period of time in excess of ninety days without seeing the children, from October of 2020 through April of 2022.

{¶20} Biehl does not believe Mother can safely care for the children due to her drug use and mental health. Two years into the case plan, Mother has not maintained sobriety and is only semi-compliant with mental health treatment. Further, Biehl testified Mother's mental health professionals have concerns for Mother's stability and her ability to care for the children.

{¶21} Father's case plan required him to engage in counseling services and address the conditions of the home. Father has maintained stable employment throughout the case. Biehl testified the home still has issues.

{¶22} Father did not start counseling until April of 2021. However, prior to that time, Biehl found Father providers one street away from him that were willing to meet with him on the week-end or in the evening. Since then, Father has consistently attended

appointments.  Despite the counseling, Father has not been able to demonstrate he can provide a safe and stable home.  Father is not applying the information from counseling to his daily life.  Biehl has repeatedly told Father that, due to her drug use, Mother is not in a position to take care of the children, so he has to be able to do it on his own.  However, after Father was told he could not leave the children with Mother, he left them with Mother.  Biehl testified that Father is still involved with Mother and, at this point, Father cannot protect the children from Mother, or provide a safe and stable home for the children.

{¶23}  Father works long hours and leaves early in the morning.  Father was not able to provide Biehl with a plan as to who would be taking care of the children while he is at work.  Father's mother is involved, but is unable to watch them full-time due to her own medical issues and needs.  Father has supervised visits with the children every other week for two hours.

{¶24}  Biehl also testified in the best interest portion of the trial.  Biehl does not believe Mother has a bond with M.G.(1), and if there is any bond, the benefit of permanency outweighs any harm of breaking the bond.  As to M.G.(2) and J.G., Biehl testified there was a bond with Mother at the beginning of the case; however, that changed due to Mother's continued drug use and inability to recognize what she has done.  The benefit of permanency outweighs any breaking of a bond Mother had with M.G.(2) and J.G.

{¶25}  Biehl testified Father's visits have gone fairly well, and there is a bond between him and the children.  However, after two years, the goal of permanency outweighs any harm that would come from breaking those bonds.  The children have been in the same foster placement since October of 2020.  The foster parent is bonded

to each child.  Each child has told Biehl they want permanency and that Mother and Father are unable to take care of them.

{¶26}  Biehl testified she believes is in the children's best interest for permanent custody to be granted to SCDJFS.  Mother poses a risk to the children, has not completed her case plan, and is unable to maintain her sobriety.  Mother has not reduced the risk she posed at the beginning of the case in any significant way.  As to Father, Biehl stated his risk to the children remains the same as it did at the beginning of the case, as he is not able to demonstrate his ability to protect and care for his children independently.

{¶27}  Gail Mager ("Mager") is a licensed professional clinical counselor at Lighthouse Family Center.  She has been Father's counselor since April of 2021.  Father has attended his counseling sessions consistently.  Mager has been working with Father to set up boundaries and space between himself and Mother, and separating himself from Mother for the good of the children.  Mager would be concerned if Father was seeing Mother weekly, because Mager does not believe it is good for Father to remain engaged to a level where he feels like he is helping her.  When asked about Father's progress in counseling, Mager described it as "flat," with very little progress because things were not changing, and they were discussing the same issues over and over again.  They would discuss options, and Father would never tell her anything specific about how he will care for the children full-time.

{¶28}  Joseph Fisher ("Fisher") is a licensed professional counselor at Child and Adolescent Behavioral Health.  Fisher is M.G.(1) and J.G.'s counselor.  M.G.(1) is worried about the possibility of returning to his parents' home because, prior to their removal from the home, M.G.(1) was taking care of his younger siblings.  J.G. also expresses anxiety

about returning to the parents' home. The children are both comfortable and well-adjusted in their foster home, and they both feel safe in their current placement.

{¶29} Father works full-time, approximately 40-70 hours per week. Father feels like counseling has been beneficial for him. Father is aware there is a No-Contact Order between Mother and the children due to her substance abuse. Father admits he withdrew his divorce complaint from Mother, but believes he still can enforce the No-Contact Order between Mother and the children. Father believes he has established appropriate boundaries with Mother because they are living separately. Father admitted to having dinner with Mother within the last week prior to the trial.

{¶30} Mother admitted she did not get a good start on her case plan because of the warrants for her arrest. Mother was arrested on April 10, 2021. She completed counseling at Deliverance House when she was judicially released from prison. She is currently seeing a counselor at CommQuest.

{¶31} Christine DiPietro is the guardian ad litem ("GAL") for the children. The GAL admitted she did not review all of the children's counseling records, but stated she based her opinion on talking to the children directly and by talking with Biehl. The GAL spoke to each child individually, and did not feel the oldest child was influencing the younger ones such that they could not express their own opinions and make their own decisions. The GAL believes it is in the best interest of the children for permanent custody to be granted to SCDJFS.

{¶32} On September 1, 2022, the trial court held an in-camera interview with M.G.(1) and J.G. J.G. reported that, when the children were under the protective supervision of SCDJFS, Father said not to tell anyone that Mother was coming to the

marital residence. J.G. does not trust his parents to do what needs to be done. When living with his parents, J.G. and his siblings had to fix their own meals and get themselves to school. Though Father said he was cleaning up the house, J.G. stated the home conditions kept getting worse and worse. J.G. loves Mother and Father, but does not want to go home with them because "bad things would happen." J.G. got mad when he saw Father and Mother sitting together at M.G.(1)'s graduation. M.G.(1) stated that, when he lived with Mother and Father, he was the parent, as he would cook, clean, and do laundry.

**{¶33}** The trial court issued a detailed judgment entry containing findings of fact and conclusions of law for each child on September 9, 2022, granting permanent custody of the children to SCDJFS, and terminating Mother and Father's parental rights. The trial court went through the testimony in the case in detail. The trial court found as follows with regard to each child: notwithstanding reasonable case planning and diligent efforts by the agency, Mother and Father have failed to remedy the conditions that caused the children to be placed; the children have been abandoned by Mother due to her lack of contact with them for a period greater than ninety (90) days; each of the children has been in the temporary custody of the agency for more than twelve months of a consecutive twenty-two month period; the children cannot be placed with either parent at this time or within a reasonable period of time; and it is in the best interest of the children that permanent custody be granted to SCDJFS.

**{¶34}** In the permanency portion of the judgment entry, the trial court found: Mother has not demonstrated an ability to maintain sobriety; from October 2020 to April 2022, Mother had no contact with the children; even after two years, the home's

conditions have not improved to a point where it is suitable for the children to return; Father and Mother have resumed their relationship; Father's inaction causes the children to remain at risk; Father has not been able to come up with a plan for the children to be cared for while he is at work; and Father's progress in counseling is "flat."

**{¶35}** The trial court stated it considered the best interest factors, and found it is in the children's best interest to grant permanent custody to SCDJFS. Specifically, the trial court found: there is no bond between Mother and the children; there is a bond between Father and the children, but the benefit of permanency outweighs the harm in severing the bond; the children are happy in their foster home; and both older children expressed a desire to stay at their foster home and not return to either Mother or Father.

**{¶36}** Mother appeals the September 9, 2022 judgment entry of the Stark County Court of Common Pleas, Family Court Division, and assigns the following as error:

**{¶37}** "I. THE TRIAL COURT'S JUDGMENT THAT [THE CHILDREN] CANNOT BE PLACED WITH MOTHER WITHIN A REASONABLE PERIOD OF TIME WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

*Permanent Custody*

**{¶38}** "[T]he right to raise a child is an 'essential' and 'basic' civil right." *In re Murray,* 52 Ohio St.3d 155, 556 N.E.2d 1169 (1990), quoting *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). An award of permanent custody must be based on clear and convincing evidence. R.C. 2151.414(B)(1).

**{¶39}** Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954). "Where the degree of proof

required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Id.* at 477. If some competent and credible evidence going to all the essential elements of the case supports the trial court's judgment, an appellate court must affirm the judgment and not substitute its judgment for that of the trial court. *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978).

**{¶40}** Issues relating to the credibility of witnesses and the weight to be given to the evidence are primarily for the trier of fact. *Seasons Coal v. Cleveland*, 10 Ohio St.3d 77, 461 N.E.2d 1273 (1984). Deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evidence in the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger*, 77 Ohio St.3d 415, 674 N.E.2d 1159 (1997).

**{¶41}** R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon filing of a motion for permanent custody of a child by a public children services agency.

**{¶42}** Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able

to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.

**{¶43}** Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, a trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

I.

**{¶44}** In her assignment of error, Mother makes two separate arguments. First, she contends the elements of R.C. 2151.414(B)(1)(a) and (E) were not met because the finding that the children could not or should not be placed with her within a reasonable time was not proven by clear and convincing evidence.

**{¶45}** We first note that the trial court determined, pursuant to R.C. 2151.414(B)(1)(d), the children have been in the temporary custody of the agency for a period of time in excess of twelve of the prior twenty-two consecutive months. Biehl testified the children were placed into the temporary custody of SCDJFS on October 23, 2020, and were continuously in the temporary custody of SCDJFS until August 23, 2022, the date of the trial. Thus, M.G.(1), J.G., and M.G.(2) have been in the custody of the agency for more than twelve months out of the last twenty-two months.

**{¶46}** As findings under R.C. 2151.414(B)(1)(a) and R.C. 2151.414(B)(1)(d) are alternative findings, each is independently sufficient to use as a basis to grant the motion

for permanent custody. *In re Daltoni*, 5th Dist. Tuscarawas No. 2007 AP 0041, 2007-Ohio-5805. This finding alone, in conjunction with a best interest finding, is sufficient to support the grant of permanent custody. *In re Calhoun*, 5th Dist. Stark No. 2008CA00118, 2008-Ohio-5458.

**{¶47}** Further, the trial court found Mother abandoned the children pursuant to R.C. 2151.414(B)(1)(b). Specifically, the trial court found Mother had no contact with the children from October 2020 to April 2022. Therefore, the trial court concluded Mother has abandoned the children by failing to visit or maintain contact with the children for more than ninety days. Pursuant to R.C. 2151.011(C), a child is "presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than ninety days, regardless of whether the parents resume contact with the child after that period of ninety days."

**{¶48}** We find competent and credible evidence supports the trial court's findings. Biehl testified Mother had gone for a period of time in excess of ninety days without seeing the children, from October of 2020 through April of 2022. Incarceration does not rebut the presumption of abandonment. *In re Wright*, 5th Dist. Stark No. 2003 CA 00347, 2004-Ohio-1094. Accordingly, we find no reversible error in the court's finding of abandonment under R.C. 2151.414(B)(1)(b).

**{¶49}** As findings under R.C. 2151.414(B)(1)(a) and R.C. 2151.414(B)(1)(b) are alternative findings, each is independently sufficient to use as a basis to grant the motion for permanent custody. *In re Daltoni*, 5th Dist. Tuscarawas No. 2007 AP 0041, 2007-Ohio-5805. This finding alone, in conjunction with a best interest finding, is sufficient to

support the grant of permanent custody. *In re Calhoun*, 5th Dist. Stark No. 2008CA00118, 2008-Ohio-5458.

**{¶50}** Because Mother has not challenged the twelve of twenty-two-month finding or abandonment finding, we would not need to address the merits of Mother's claim with regards to the trial court's determination that the children could not or should not be placed with her within a reasonable time. However, even if we consider Mother's argument, we find the trial court did not commit error in determining the children cannot be placed with Mother at this time or within a reasonable period of time. Under R.C. 2151.414(E), the trial court must consider all relevant evidence before making this determination. The trial court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the factors enumerated in R.C. 2151.414(E)(1) through (16) exist with respect to each of the child's parents.

**{¶51}** A review of the record supports the trial court's conclusion that the children cannot be placed with Mother within a reasonable time. Mother failed to start her case plan services until she was judicially released from prison in October of 2021. Mother has not consistently attended her outpatient mental health counseling. In May of 2022, Mother failed to show up for two drugs screens. In late May of 2022 and early June of 2022, Mother tested positive for methamphetamines. Mother has consistently tested positive for marijuana, with her last positive test for marijuana on August 10, 2022. After two years, Mother is unable to demonstrate sobriety. Biehl testified Mother has not reduced the risk she posed at the beginning of the case in any significant way.

**{¶52}** In the second portion of her assignment of error, Mother argues SCDJFS did not make reasonable efforts to assist Mother in remedying the problems leading to the removal of the children; thus, the motion for permanent custody should be denied.

**{¶53}** First, the Ohio Supreme Court has held the trial court is not obligated by R.C. 2151.419 to make a determination that the agency used reasonable efforts to reunify the family at the time of the permanent custody hearing unless the agency has not established that reasonable efforts have been made prior to that hearing.  *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816; see also R.C. 2151.419.  The trial court is only obligated to make a determination that the agency has made reasonable efforts to reunify the family at "adjudicatory, emergency, detention, and temporary-disposition hearings, and dispositional hearings for abused, neglected, or dependent children, all of which occur prior to a decision transferring permanent custody to the state."  *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816; *In the Matter of L.J.*, 5th Dist. Licking No. 2019 CA 0079, 2019-Ohio-5231.

**{¶54}** In this case, the record reflects the trial court made reasonable-efforts findings at various points throughout the case, as demonstrated in judgment entries after the hearings held on October 23, 2020, June 18, 2021, December 14, 2021, and June 14, 2022.  Consequently, the agency did not need to prove at the permanent custody hearing that it made reasonable reunification efforts.  *Id.*

**{¶55}** In its September 9, 2022 judgment entry, the trial court found SCDJFS made reasonable efforts to reunify the family.  Mother contends the efforts of SCDJFS were not reasonable because they did not schedule follow-up counseling sessions

between Mother and the children, and the children should have had more contact with Mother.

{¶56} We find there is competent and credible evidence to confirm that SCDJFS made reasonable efforts to assist Mother in eliminating the need for the continued removal of the children. Mother was provided with a case plan with services to reduce the risk she posed to the children. However, despite Biehl urging Mother to turn herself in so that she could begin her case plan, Mother did not do so. Thus, she could not begin her case plan until after she was released from prison. The agency provided Mother with case management services, and counseling for Mother and the children. However, Mother did not attend the outpatient counseling consistently, and Mother continued to test positive for methamphetamines and marijuana, thus preventing her from visiting the children.

{¶57} The issue is not whether there was anything more the agency could have done, but whether the agency's case planning and efforts were reasonable and diligent under the circumstances of the case. *In the Matter of J.H.*, 5th Dist. Guernsey No. 19CA000025, 2019-Ohio-5184. We find there is competent and credible evidence to support the trial court's determination that SCDJFS' efforts were reasonable and diligent under the circumstances of the case.

{¶58} Based on the foregoing, Mother's assignment of error is overruled.

{¶59}   The September 9, 2022 judgment entry of the Stark County Court of Common Pleas, Family Court Division, is affirmed.


By Gwin, P.J.,

Hoffman, J., and

Delaney, J., concur


WSG:clw 0303