[Cite as *In re M.A.*, 2024-Ohio-3432.]

COURT OF APPEALS
HOLMES COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IN RE:  M. A. | : | JUDGES: |
| | : | Hon. Patricia A. Delaney, P.J. |
| | : | Hon. W. Scott Gwin, J. |
| | : | Hon. Andrew J. King, J. |
| | : | |
| | : | |
| | : | Case No. 24CA006 |
| | : | |
| | : | O P I N I O N |


CHARACTER OF PROCEEDING:              Appeal from the Juvenile Court,
                                      Case No. 22N106


JUDGMENT:                             Affirmed


DATE OF JUDGMENT:                     September 6, 2024


APPEARANCES:

For Plaintiff-Appellant              For Defendant-Appellee

JACQUELYN M. DOSSI                   ROBERT K. HENDRIX
343 S. Crownhill Road                164 E. Jackson Street
P.O. Box 149                         Millersburg, OH  44654
Orrville, OH  44667

*King, J.*

{¶ 1}  Appellant Father appeals the March 18, 2024 judgment of the Holmes County Court of Common Pleas Juvenile Division terminating his parental rights and granting permanent custody to the Holmes County Department of Job and Family Services. We affirm the trial court.

FACTS AND PROCEDURAL HISTORY

{¶ 2}  Appellant C.A. is the father of M.A., who was born on July 20, 2012. Mother died of a drug overdose in 2017. Summit County Job and Family Services was involved with the family from 2013 to 2015. Father was incarcerated from 2013 to 2016 and was sentenced to prison again in 2021. At the time of the permanent custody hearing in this matter, Father's expected release date was April 30, 2025.

{¶ 3}  Due to Mother's involvement with Summit County Job and Family Services, M.A. was placed with a maternal uncle in July 2015. Maternal uncle committed suicide in 2018 and M.A. was sent to live with an unrelated Amish family, M.Y. and F.Y., per a provision in her uncle's will. The present case arose when concerns regarding M.A.'s placement with M.Y. and F.Y. emerged and Holmes County Job and Family Services (HCJFS) became involved.

{¶ 4}  On August 31, 2022, the HCJFS filed a complaint alleging M.A. was a dependent child. On November 30, 2022 the trial court found M.A. was a dependent child and continued temporary custody with M.Y. and F.Y. with protective supervision by HCJFS. When the circumstances of that placement continued to deteriorate, on May 8, 2023, the trial court placed M.A. in the temporary custody of HCJFS. M.Y. and F.Y. were removed from the case plan.

{¶ 5}   On July 18, 2023, M.A. was placed with N.B and C.B. Father was added to the case plan and directed to engage in parenting classes and individual mental health counseling. N.B. and C.B. expressed their desire to adopt M.A.

{¶ 6}   On September 13, 2023, HCJFS filed a motion for permanent custody. On February 1, 2024, a hearing was held on the matter.

{¶ 7}   Peighton Lahna of HCJFS testified M.A. was placed on her caseload in February of 2023. She noted that since being placed with N.B. and C.B., M.A. is "excelling" and is a completely different child than when she was first placed on Lahna's caseload. Transcript of hearing (T.) at 20. Lahna stated M.A. rarely mentions her father and indicates she does not really know him. She has further stated M.A. "loves where she's at" and has expressed her desire to be adopted by N.B. and C.B. T. 20-21

{¶ 8}   Lahna stated kinship placements had been explored but none were deemed suitable. She therefore opined that M.A. deserves permanency and permanent custody was therefore in M.A.'s best interests. T. 21-22.

{¶ 9}   C.B. testified that M.A. has been living with her and N.B. since June 6, 2023. T. 13. M.A. is in counseling for reactive attachment disorder due to the trauma she has experienced and is doing well. T. 14. M.A. is also doing well academically, has been on the merit role twice. She participates in gymnastics, and enjoys taking care of her two parakeets and one rabbit. T. 16-17. C.B. stated she and N.B. have an appropriate home and the financial resources to house and care for M.A. She stated that if the trial court granted HCJFS permanent custody, they plan to adopt M.A.  T. 15-16.

{¶ 10} Father testified he has not lived with M.A. since 2013. T. 7. He further stated he was in prison from 2013 to 2016. T. 8. In June of 2021 he was incarcerated again on

drug possession and trafficking charges. T. 7-8. His expected release date is April 30, 2025. Father also has had other charges and incarcerations from the time he was a juvenile. T. 43-44. Father stated he had made mistakes, but did not want to lose M.A. for good. He would rather N.B. and C.B. have legal custody. T. 11-12. Father stated he has been unable to complete parenting classes in prison due to a waiting list to get into the classes. T. 34. He stated he has had no contact with M.A. since early 2023. T. 40. No testimony was elicited regarding Father's compliance with individual mental health counseling.

{¶ 11} The guardian ad litem filed a report agreeing with HCJFS's motion for permanent custody.

{¶ 12} At the conclusion of the hearing, the trial court ordered the parties to file their closing arguments in writing.

{¶ 13} On March 18, 2024, the trial court issued its judgment terminating Father's parental rights and granting permanent custody to HCJFS. The trial court found permanent custody was in M.A.'s best interests. It additionally found that by virtue of his actions leading to two separate prison terms causing Father to be incarcerated for more than half of M.A.'s life, Father has demonstrated an unwillingness to provide an adequate permanent home for his child. The trial court further found Father had abandoned M.A. as his testimony indicated his last contact with her was in early 2023, that his repeated incarcerations had prevented him from providing care for M.A., and that Father would not be able to care for M.A. for at least 18 months from when the motion for permanent custody was filed.

{¶ 14} Father filed an appeal and the matter is now before this court for consideration. He raises three assignments of error as follow:

I

{¶ 15} "THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY OF THE MINOR CHILD TO HOLMES COUNTY CHILDREN'S SERVICES FINDING PERMANENT CUSTODY IN THE BEST INTEREST OF THE MINOR CHILD, PURSUANT TO R.C. 2151.414."

II

{¶ 16} "THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY OF THE MINOR CHILD TO HOMES COUNTY CHILDREN'S SERVICES, FINDING THE CHILD CANNOT BE PLACED WITH EITHER OF THE CHILD'S PARENTS WITHIN A REASONABLE TIME OR SHOULD NOT BE PLACED WITH THE CHILD'S PARENTS PURSUANT TO R.C. 2151.414."

III

{¶ 17} "THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY OF THE MINOR CHILD TO HOLMES COUNTY CHILDREN'S SERVICES, FINDING THE CHILD TO BE ABANDONED PURSUANT TO R.C. 2151.414."

I, II, III

{¶ 18} Father's assignments of error are interrelated and will therefore be addressed together. Father argues the trial court erred in finding 1.) M.A. could not be placed with him in a reasonable period of time; 2.) that M.A. was abandoned; and 3.) permanent custody was in M.A.'s best interests. We disagree.

Applicable Law

{¶ 19}   R.C. 2151.414(B)(1) states in relevant part that permanent custody may be granted to a public or private agency if the trial court determines by clear and convincing evidence at a hearing held pursuant to division (A) of R.C. 2151.414, that it is in the best interest of the child and any of the following apply:

. . .

(b) The child is abandoned.

. . .

{¶ 20} R.C. 2151.414(B) therefore provides a two-pronged analysis the trial court is required to apply when ruling on a motion for permanent custody. In practice, the trial court will determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1) (a) through (d) is present before proceeding to a determination regarding the best interest of the child.

{¶ 21} R.C. 2151.414(D) governs "best interests" and states:

(D) In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 or division (C) of section 2151.415 of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:

(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home

providers, and any other person who may significantly affect the child;

(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period ending on or after March 18, 1999;

(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶ 22} R.C. 2151.414(E) lists factors for a trial court to consider by clear and convincing evidence in its determination whether a child cannot be placed with either parent within a reasonable time or should not be placed with either parent. That section states in relevant part:

(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of

the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

. . .

(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;

. . .

(10) The parent has abandoned the child.

. . .

(12) The parent is incarcerated at the time of the filing of the motion for permanent custody or the dispositional hearing of the child and will not be available to care for the child for at least eighteen months after the filing of the motion for permanent custody or the dispositional hearing.

(13) The parent is repeatedly incarcerated, and the repeated incarceration prevents the parent from providing care for the child.

. . .

{¶ 23} Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus. See also, *In re Adoption of Holcomb*, 18 Ohio St.3d 361 (1985). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Cross* at 477.

{¶ 24} Father argues the trial court's finding that permanent custody was in M.A.'s best interests is against the manifest weight of the evidence. On review for manifest weight, the standard in a civil case is identical to the standard in a criminal case: a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury [or finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction [decision] must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). In weighing the evidence, however, we are always mindful of the presumption in favor of the trial court's factual findings. *Eastley v. Volkman*, 2012-Ohio-2179.

### Father's Arguments

{¶ 25} Here, the trial court found Father had abandoned M.A. through his repeated incarceration and his lack of contact with M.A. since early 2023. Pursuant to R.C. 2151.011(C) "a child shall be presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than ninety days, regardless of whether the parents resume contact with the child after that period of ninety days."

{¶ 26} The permanent custody hearing took place on February 1, 2024. Father testified he had not had any contact with M.A. since early 2023 and has been incarcerated. T. 40. Incarceration, however, does not rebut the presumption of abandonment. *Matter of M.G.* 2023-Ohio-696, ¶ 48 (5th Dist.) citing *In re Wright*, 2004-Ohio-1094 (5th Dist.). We therefore find the trial court did not err in finding Father abandoned M.A.

{¶ 27} In the same vein, the trial court did not err in finding M.A. could not be placed with Father in a reasonable period of time. Under R.C. 2151.414(E), the trial court must consider all relevant evidence before making this determination. The trial court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the factors enumerated in R.C. 2151.414(E)(1) through (16) exist with respect to each of the child's parents.

{¶ 28} As already discussed, the trial court found Father abandoned M.A. It further found Father's own actions have led to his incarceration thus demonstrating Father's unwillingness to provide an adequate permanent home for M.A. These incarcerations have prevented him from caring for M.A. Finally, the trial court found Father will not be able to care for M.A. for at least 18 months after the motion for permanent custody was filed. There is simply nothing in the record to rebut any of these findings. We therefore find the trial court did not err in finding M.A. could not be placed with Father within a reasonable time.

{¶ 29} Finally, we find the trial court's finding that permanent custody was in M.A.'s best interests is not against the manifest weight of the evidence. As outlined in our statement of facts, M.A. rarely talks about her Father and states she does not know him. Indeed, Father has not been present for more than half of M.A.'s life. She last lived with Father in 2013 and last spoke to him in early 2023. M.A. has also made it clear she loves her current placement and wishes to be adopted by C.B. and M.B. The case worker indicated M.A. is excelling in her current environment and has become a completely different child. There is an obvious need for permanency and Father cannot provide secure, permanent placement at this time nor in a reasonable period of time.

{¶ 30} Based upon the testimony presented, we do not find the trial court erred, lost its way, or created a manifest miscarriage of justice in terminating Father's parental rights and granting permanent custody of M.A. to HCJFS as clear and convincing evidence was presented to support the trial court's findings.

{¶ 31} Father's three assignments of error are overruled.

{¶ 32} The judgment of the Holmes County Court of Common Pleas Juvenile Division is affirmed.

By King, J.,

Delaney, P.J. and

Gwin, J. concur.