[Cite as *In re A.S.*, 2025-Ohio-2663.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

IN THE MATTER OF:
A.S.

            :
            :
            :
            :
            :
            :
            :
            :
            :
            :

JUDGES:
Hon. Andrew J. King, P.J.
Hon. Robert G. Montgomery, J.
Hon. David M. Gormley, J.


Case No. 25 CA 00015

O P I N I O N

CHARACTER OF PROCEEDING:

Appeal from the Licking County
Court of Common Pleas, Juvenile
Division, Case No. F2024-0302

JUDGMENT:

Affirmed

DATE OF JUDGMENT:

July 29, 2025

APPEARANCES:

For Appellee Licking County
Job & Family Services

Kenneth W. Oswalt
Assistant Prosecuting Attorney
20 S. Second Street, 4th Floor
Newark, Ohio 43055

For Appellant Father

Jermaine L. Colquitt
14 N. Park Place
Newark, Ohio 43055

For Child's Guardian ad litem

Laurie R. Wells
195 E. Broad Street
P.O. Box 958
Pataskala, Ohio 43062

*Gormley, J.*

**{¶1}** Appellant father challenges the judgment of the Licking County Juvenile Court awarding permanent custody of his daughter, A.S., to the Licking County Department of Job and Family Services (the "Agency"). He argues here that the trial court wrongly found that the Agency was not required to make reasonable efforts to reunify him with A.S., and he claims that the trial court erred in finding that A.S. could not or should not be placed with him within a reasonable period of time. Because we see no error in the trial court's ruling, we now affirm.

## Facts and Procedural History

**{¶2}** A.S. was born on August 1, 2024. On the day of her birth, A.S.'s mother tested positive for methamphetamine, and her father was serving a prison term for aggravated possession of drugs. Mother and father had a history with the Agency because a previous child of theirs had been born under similar circumstances, so the Agency — concerned for A.S.'s safety after mother's positive methamphetamine test — took emergency temporary custody of A.S.

**{¶3}** Shortly thereafter, the Agency filed a complaint in the Licking County Juvenile Court alleging that A.S. was an abused, neglected, or dependent child, and it requested permanent custody of A.S. An adjudicatory hearing on that complaint was conducted by a magistrate in September 2024, but mother and father — despite being served with a summons and a copy of the complaint — did not appear at the hearing. The magistrate concluded then that A.S. was an abused, neglected, or dependent child.

**{¶4}** A dispositional hearing was held in November 2024, where both mother and father appeared and were represented by counsel. The magistrate concluded at that

hearing that permanent custody of A.S. should be granted to the Agency. Father filed objections to the magistrate's decision, but those objections were overruled by the trial judge. Father now appeals.

## The Agency Was Not Required to Make Reasonable Efforts to Reunify A.S. With Father

{¶5} In his first assignment of error, father argues that, under R.C. 2151.419, the Agency was required to make reasonable efforts to reunify him with A.S. before it could permanently terminate his parental rights over A.S. We disagree.

{¶6} R.C. 2151.419(A)(1) requires that, at a dispositional hearing for a child who has been adjudicated abused, neglected, or dependent, "the public children services agency . . . that filed the complaint in the case" must demonstrate that it "made reasonable efforts to prevent the removal of the child from the child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home."

{¶7} This reasonable-efforts requirement, however, does not apply when "[t]he parent from whom the child was removed has had parental rights involuntarily terminated" under R.C. 2151.353, 2151.414, or 2151.415 "with respect to a sibling of the child." R.C. 2151.419(A)(2)(e).

{¶8} Mother and father are also the parents of C.N., one of A.S.'s older siblings. In 2023, the Agency took temporary custody of C.N. because mother and father had repeatedly abused drugs and were unable to obtain independent housing and stable employment. The Agency designed case plans for mother and father that, if completed, might have enabled them to be reunified with C.N. Neither parent made significant

progress on those case plans, though, so — under R.C. 2151.414 — the Licking County Juvenile Court awarded permanent custody of C.N. to the Agency.

{¶9} Father argues that — though C.N. is a sibling of A.S., and though the Agency was awarded permanent custody of C.N. under R.C. 2151.414 — the sibling exception to the reasonable-efforts requirement does not apply here because he did not contest the permanent-custody proceedings in C.N.'s case, so, he argues, the termination of his parental rights over C.N. was not involuntary.

{¶10} We find that father did not, at the permanent-custody hearings involving C.N, voluntarily surrender permanent custody of C.N. to the Agency. The voluntary surrender of permanent custody of a child to a child-services agency is controlled by R.C. 5103.15. Under the version of that statute in effect when the permanent-custody proceedings involving C.N. occurred, "the parents . . . of a child" could agree to "surrender . . . the child into the permanent custody of the agency" only with "juvenile court approval." R.C. 5103.15(B)(1).

{¶11} When asked to interpret that version of the statute, the Supreme Court of Ohio explained that the provision "manifestly condition[ed] any such permanent-surrender agreement on the parents . . . having custody of the child." *Adoption Link, Inc. v. Suver*, 2006-Ohio-6528, ¶ 9. Under that reading of the statute, a parent could not execute a permanent-surrender agreement if that parent's child had been placed in the temporary custody of a children-services agency. *See In re A.P.*, 2015-Ohio-206, ¶ 20 (9th Dist.) ("At the time Father purported to surrender his parental rights to then three-year-old A.P., she was in the temporary custody of MCJFS. Because Father did not have custody of

A.P. at the time he attempted to surrender his parental rights, he could not execute his surrender under R.C. 5103.15(B)(1).").

**{¶12}** The Agency had temporary custody of C.N. at the time of the permanent-custody hearing for that elder sibling of A.S., so father was unable to surrender permanent custody of C.N. at that hearing. When the juvenile court granted permanent custody of C.N. to the Agency at the conclusion of the permanent-custody hearing, Father's parental rights over C.N. were terminated involuntarily. Under the R.C. 2151.419(A)(2)(e) sibling exception to the reasonable-efforts requirement in R.C. 2151.419(A)(1), therefore, the Agency was not required to show that it made reasonable efforts to reunify father with A.S.

**{¶13}** Moreover, as discussed below, the evidence introduced at the dispositional hearing in A.S.'s case established that, under R.C. 2151.011(C), father had abandoned A.S. The statute that establishes the reasonable-efforts-at-reunification requirement contains an additional exception for cases where the "parent from whom the child was removed has abandoned the child." R.C. 2151.419(A)(2)(d). Because that exception also applies to this case, the Agency had no obligation to try to reunite A.S. and her father. *See Matter of C.H.*, 2018-Ohio-3459, ¶ 13–15 (5th Dist.) ("abandonment . . . is independently sufficient to use as a basis to grant a motion for permanent custody"). Father's first assignment of error is overruled.

**The Trial Court Correctly Concluded that A.S. Could Not or Should Not be Placed With Father Within a Reasonable Period of Time**

**{¶14}** In his second assignment of error, father argues that the trial court erred in concluding that at least one of the R.C. 2151.414(E) factors (a list of 16 factors that are

used to determine if, under R.C. 2151.414(B)(1)(a), a child cannot or should not be placed with a parent within a reasonable time) applied.

## A. The Statutory Framework

{¶15} A trial court "may grant permanent custody of a child to a movant if the court determines . . . by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency" and that any one of the five factors enumerated in R.C. 2151.414(B)(1)(a) through (e) applies. R.C. 2151.414(B)(1). R.C. 2151.414(B), therefore, "establishes a two-pronged analysis." *Matter of K.H.*, 2025-Ohio-21, ¶ 30 (5th Dist.). "In practice, the trial court will usually determine whether one of the . . . circumstances delineated in R.C. 2151.414(B)(1)(a) through [(e)] is present before proceeding to a determination regarding the best interest of the child." *Id.* Here, though, father challenges on appeal only the trial court's conclusion that at least one of the 16 R.C. 2151.414(E) factors applied, so we will not review the trial court's best-interest analysis.

{¶16} Clear and convincing evidence is evidence that "'will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *Id.* at ¶ 26, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus. "'Where the proof required must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof.'" *In re Z.C.*, 2023-Ohio-4703, at ¶ 8, quoting *State v. Schiebel*, 55 Ohio St.3d 71, 74 (1990).

**B. The R.C. 2151.414(E) Factors**

**{¶17}** R.C. 2151.414(B)(1) lists five scenarios, any one of which can serve as a prerequisite for a trial court's consideration of a permanent-custody request. The trial judge found that R.C. 2151.414(B)(1)(a) applied in this case. "As long as one of these factors is present, then the first prong of the test is satisfied." *Matter of A.S.*, 2024-Ohio-2099, ¶ 36 (5th Dist.).

**{¶18}** R.C. 2151.414(B)(1)(a) applies when the "child is not abandoned . . . and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents."

**{¶19}** To determine, under R.C. 2151.414(B)(1)(a), whether a child cannot be placed with either parent, a court must look to R.C. 2151.414(E). That section in turn lists 16 possible scenarios, any one of which can support a trial judge's finding that a child cannot be placed with either parent. The trial judge here relied on six of them: R.C. 2151.414(E)(4), (10), (11), (13), (15), and (16). "The existence of one factor alone will support a finding that the child cannot be placed with the parent within a reasonable time." *In re A.W.*, 2024-Ohio-5791, ¶ 19 (5th Dist.).

**{¶20}** R.C. 2151.414(E)(4) applies when "[t]he parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child."

**{¶21}** R.C. 2151.414(E)(10) applies when "[t]he parent has abandoned the child."

**{¶22}** R.C. 2151.414(E)(11) applies when "[t]he parent has had parental rights involuntarily terminated with respect to a sibling of the child . . . and the parent has failed

to provide clear and convincing evidence to prove that, notwithstanding the prior termination, the parent can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child."

**{¶23}** R.C. 2151.414(E)(13) applies when "[t]he parent is repeatedly incarcerated, and the repeated incarceration prevents the parent from providing care for the child."

**{¶24}** R.C. 2151.414(E)(15) applies when "[t]he parent has committed abuse . . . against the child or caused or allowed the child to suffer neglect . . . and the court determines that the seriousness, nature, or likelihood of recurrence of the abuse or neglect makes the child's placement with the child's parent a threat to the child's safety."

**{¶25}** R.C. 2151.414(E)(16) allows the trial judge to consider any other relevant factor.

### C. The Record Supports the Trial Court's R.C. 2151.414(E) Findings

**{¶26}** At the outset of this inquiry, we note that father challenges here only the trial court's findings as to R.C. 2151.414(E)(4), (10), (11), and (13). Father does not challenge the trial court's findings on the R.C. 2151.414(E)(15) and (16) factors. Father's failure to second-guess the trial court's view that sufficient evidence was presented on those two factors is fatal to his appeal, given that any single factor can support a finding that a child cannot be placed with a parent within a reasonable time. *See Matter of L.T.*, 2024-Ohio-2700, ¶ 13 (5th Dist.) ("[b]y virtue of the two-issue rule, a decision which is supported by one or more alternate grounds properly submitted is invulnerable to attack on one issue only").

**{¶27}** Even so, we in fact agree with the trial court's findings on the provisions of R.C. 2151.414(E) that father has chosen to challenge.

**{¶28}** Clear and convincing evidence supports the trial court's R.C. 2151.414(E)(4) finding that father demonstrated a lack of commitment toward A.S. Testimony at the permanent-custody hearing indicated that father had never met A.S., that he was unemployed, that he did not have independent housing, and that he was not engaged in any form of substance-abuse treatment. The court noted that father was unable to maintain a significant period of sobriety when he was living out of prison and that the actions that led to his incarceration showed an unwillingness to provide A.S. — who has special needs — with an adequate permanent home.

**{¶29}** We also see in the record clear and convincing evidence of the R.C. 2151.414(E)(10) factor: father abandoned A.S. The evidence showed that father was incarcerated at the time of A.S.'s birth, and he did not have any contact with her for approximately 116 days afterwards. Father was therefore presumed to have abandoned A.S., and it became his burden to rebut that presumption. *See* R.C. 2151.011(C) (a child is "presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than ninety days, regardless of whether the parents resume contact with the child after that period of ninety days"); *In re Custody of C.E.*, 2005-Ohio-5913, ¶ 17 (2d Dist.) (construing the presumption in R.C. 2151.011(C) as a "rebuttable presumption").

**{¶30}** Father argues that he rebutted the abandonment presumption because his incarceration prevented him from having any contact with A.S. "Incarceration, however, does not rebut the presumption of abandonment." *In re M.A.*, 2024-Ohio-3432, ¶ 26 (5th Dist.), citing *Matter of M.G.*, 2023-Ohio-696, ¶ 48 (5th Dist.).

**{¶31}** We readily conclude that father's challenges to the other two factors he cites — R.C. 2151.414(E)(11) and (13) — also fall short, though we need not separately address those provisions. As we noted above, just one of the 16 factors in R.C. 2151.414(E) need be met by the Agency. With no challenge by father to the trial court's findings that factors 15 and 16 supported a permanent-custody outcome, and with our own conclusion that the evidence supported the trial court's similar findings on factors 4 and 10, we need not belabor the point.

**{¶32}** Because at least one of the R.C. 2151.414(E) factors was proven at the permanent-custody hearing, the trial judge correctly determined that A.S. could not be placed with father within a reasonable time or should not be placed with father. Father's second assignment of error is overruled, and the judgment of the trial court is affirmed.

By: Gormley, J.

King, P.J. and

Montgomery, J. concur.