[Cite as *In re S.D.*, 2025-Ohio-4340.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

IN RE: S.D.

Case No. 2025-CA-00019

<u>Opinion And Judgment Entry</u>

Appeal from the Court of Common Pleas, Juvenile Division

Judgment: Affirmed

Date of Judgment Entry: September 12, 2025

**BEFORE:** Craig R. Baldwin; Andrew J. King; David M. Gormley, Appellate Judges

**APPEARANCES:** DAVID A. TAWNEY, for Appellant-Mother; M. DOUGLAS BRIMBERRY, JR., for Appellee-Agency; SARAH RAHTER, for Child-S.D.; WILLIAM HOLT, Guardian ad Litem; JULIA TABOR, for Father.

*King, J.*

{¶ 1}   Appellant mother, J.D., appeals the May 12, 2025 decision of the Fairfield County Juvenile Court terminating her parental rights and granting permanent custody of the child to appellee, Fairfield County Child Protective Services ("FCCPS").  We affirm the trial court.

FACTS AND PROCEDURAL HISTORY

{¶ 2}   On April 6, 2023, FCCPS filed a complaint for the temporary custody of S.D. born November 2017, alleging the child to be dependent.  Mother of the child is J.D., appellant herein; presumed father is S.D.  The initial concerns centered on allegations of sexual abuse of the child by father and/or mother's boyfriend, and family members not

believing the allegations and not acknowledging the concerns. The child was placed in shelter care on April 6, 2023. Case plans were filed and agreed to by the parents.

{¶ 3} An agreed adjudicatory and dispositional hearing was held on June 23, 2023. The trial court found the child to be dependent and continued the child's temporary custody with FCCPS.

{¶ 4} Case reviews were held on October 6, 2023, and January 5, April 2, July 2, and October 1, 2024, and January 7, 2025. On November 13, 2024, FCCPS filed a motion for permanent custody of the child. A hearing before a magistrate was held on March 5, 2025. By decision filed March 18, 2025, the magistrate terminated all parental rights and granted permanent custody of the child to FCCPS. Mother filed objections. By judgment entry filed May 12, 2025, the trial court overruled the objections and upheld the magistrate's decision.

{¶ 5} Mother filed an appeal with the following assignment of error:

I

{¶ 6} "THE TRIAL COURT ACTED IN ERROR BY CONDUCTING A HEARING ON THE PERMANENT CUSTODY MOTION PRIOR TO THE END OF THE STATUTORY PERIOD DESIGNATED FOR THE COURT'S DECISION ON THIS MATTER."

I

{¶ 7} Mother claims the trial court erred in hearing the permanent custody motion prior to the end of the statutory period. We disagree.

{¶ 8}   While the assignment of error is couched as a statutory time issue, in her appellate brief, mother argues the evidence was insufficient to warrant permanent custody to FCCPS.

{¶ 9}   R.C. 2151.414(B)(1) states permanent custody may be granted if the trial court determines, by clear and convincing evidence, that it is in the best interest of the child and:

(a) The child is not abandoned or orphaned . . . and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

(b) The child is abandoned.

(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period . . . .

(e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

{¶ 10} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must conduct when ruling on a motion for permanent custody.

{¶ 11} Clear and convincing evidence is that evidence "which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford,* 161 Ohio St. 469 (1954), paragraph three of the syllabus. *See In re Adoption of Holcomb,* 18 Ohio St.3d 361 (1985). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Cross* at 477.

{¶ 12} The child was placed in FCCPS's temporary custody on April 6, 2023, the motion for permanent custody was filed on November 13, 2024, and the hearing on the motion was held on March 5, 2025; therefore, the child was in the temporary custody of a public children services agency for twelve or more months of a consecutive twenty-two-month period under R.C. 2151.414(B)(1)(d). This fact was stipulated to by all the parties. *See* Stipulated Findings of Fact attached to March 18, 2025 Magistrate's Decision. The hearing on permanent custody was not held prior to the end of the statutory period designated for the trial court's decision on the matter.

{¶ 13} Because R.C. 2151.414(B)(1)(d) applied in this case, the trial court properly moved to a best interest analysis. "As long as one of these factors is present, then the first prong of the test is satisfied." *Matter of A.S.*, 2024-Ohio-2099, ¶ 36 (5th Dist.); *accord Matter of A.S.,* 2025-Ohio-2663, ¶ 17. A finding under R.C. 2151.414(B)(1)(d), coupled with a best interest finding, is sufficient to support the grant of permanent custody. *In re Calhoun*, 2008-Ohio-5458, ¶ 45 (5th Dist.); *accord In re K.B.*, 2025-Ohio-2997, ¶ 45 (5th Dist.).

{¶ 14} Notwithstanding the R.C. 2151.414(B)(1)(d) stipulation, the trial court noted mother failed to comply with most aspects of her case plan. *See* Judgment Entry filed May 12, 2025. Mother was to undergo assessments for mental health and substance abuse and follow all recommendations, submit to drug and alcohol screenings, attend the child's counseling when appropriate, complete a parenting education program, and establish stable and consistent housing. T. at 49, 62, 65, 71, 103, 145. The trial court found mother had some twenty months to work on her case plan, but was incarcerated for three of those months "due to her own failures to abide by laws or her probation rules." The trial court held that time against her "in that she made herself unavailable to her child or to work the case plan." The trial court found mother failed to obtain an assessment for mental health and substance abuse and follow through with counseling and drug and alcohol screenings. These findings are supported in the record, including through mother's own testimony. T. at 38-41, 44-45, 62, 104. Mother also failed to obtain stable housing. T. at 37, 45, 71-73, 104-105.

{¶ 15} R.C. 2151.414(D)(1) sets forth the factors a trial court shall consider in determining the best interest of a child:

(D)(1) In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 or division (C) of section 2151.415 of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period . . . ;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶ 16} As for best interests, caseworkers testified the child needs permanency in order to meet the child's mental health needs, keep the child safe, and provide stability; the child needs stable housing and a forever home. T. at 109, 150. The child has "endured some sexualized trauma" and experiences nightmares and night terrors and behavioral issues such as lashing out, hitting, pushing, and kicking; the child is on an IEP plan at school. T. at 88, 117-118, 169, 202. The child needs a high level of care. T. at 170. The guardian ad litem believed permanent custody to FCCPS was in the child's best

interest.  T. at 200.  The trial court considered the trauma experienced by the child and given "Mother's 'sporadic' counseling, self-acknowledged mental health barriers, and continued use of marijuana, and lack of consistency in housing," found mother cannot provide the child with a stable environment.  *See* Judgment Entry filed May 12, 2025.  The trial court noted mother has not consistently addressed her own concerns to meet "the demands emotionally, physically, educationally, and financially of Child with significant trauma."  *Id.*

{¶ 17} Based upon the stipulation and the testimony presented, we do not find the trial court erred in terminating mother's parental rights and granting permanent custody of the child to FCCPS.  We find sufficient evidence to support the trial court's decision.

{¶ 18} The sole assignment of error is denied.

{¶ 19} For the reasons stated in our accompanying Opinion, the judgment of the Fairfield County Juvenile Court is AFFIRMED.

{¶ 20} Costs to Appellant.

By: King, J.

Baldwin, P.J. and

Gormley, J. concur.