[Cite as *In re J.L.*, 2026-Ohio-807.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| IN RE: J.L. | Case No. 2025 CA 00131 |
| | Opinion And Judgment Entry |
| | Appeal from the Stark County Court of Common Pleas, Juvenile Division,  Case No. 2024 JCV 01163 |
| | Judgment:  Affirmed |
| | Date of Judgment Entry:March 10, 2026 |

**BEFORE:**   WILLIAM B. HOFFMAN, P.J., ROBERT G. MONTGOMERY, J., KEVIN W. POPHAM, J.; Appellate Judges

**APPEARANCES:** JAMES B. PHILLIPS, for Appellee; KATHALEEN S. O'BRIEN, for Appellant

OPINION

*Popham, J.,*

{¶1}    Father appeals the September 10, 2025, judgment entry of the Stark County Court of Common Pleas, Juvenile Division, terminating his parental rights and granting permanent custody of J.L. to Stark County Job and Family Services ("SCJFS").  For the reasons below, we affirm.

*Facts & Procedural History*

{¶2}    B.C. is the mother ("Mother") of J.L., who was born on September 29, 2024.  J.S.L. is the father ("Father") of J.L.

{¶3} Mother was convicted of felony child endangering for causing physical injuries to J.L.'s sibling. While Mother was serving her sentence, she gave birth to J.L. On October 1, 2024, SCJFS initially filed a complaint. At that point in time, paternity had not been established for Father. On October 2, 2024, the trial court held an emergency shelter care hearing and placed J.L. into the temporary custody of SCJFS. On October 11, 2024, SCJFS filed a first amended complaint.

{¶4} The amended complaint alleged, in part, as follows: Mother was convicted of felony child endangering after J.L.'s sibling had multiple fractures of her arms and legs that were determined to be abusive; Mother's release date from prison is not until March 23, 2027; Father has a criminal history that includes assault, aggravated menacing, theft, criminal damaging, disorderly conduct, and arson; and Father has a history with SCJFS and previous concerns included drug abuse and homelessness.

{¶5} On October 30, 2024, the magistrate held a hearing – at which Father appeared. On December 2024, the magistrate held an adjudicatory hearing – at which Father appeared and stipulated to a finding of dependency.

{¶6} On January 30, 2025, SCJFS notified the trial court that genetic testing had been completed and confirmed that Father was the biological father of J.L. Accordingly, Father was added as a case plan participant. Father's case plan required him to complete a parenting assessment at Lighthouse Family Center and follow all recommendations from the service providers; to attend all required appointments and participate in the required appointments; to complete a drug and alcohol assessment at CommQuest Recovery Services and follow all recommendations from the service providers; and to submit to random drug screens as requested by SCJFS. SCJFS

proposed that Father would have twice monthly supervised visits with J.L. However, those visits never began because Father was arrested.

{¶7} On April 30, 2025, a dispositional hearing was held - at which the trial court adopted and approved the amended case plan and ordered J.L. to remain in the temporary custody of SCJFS. At both the December 20, 2024, adjudicatory hearing and the April 30, 2025, dispositional hearing, the trial court found SCJFS made reasonable efforts to prevent removal, eliminate continued removal, or make it possible for the child to return safely to the home.

{¶8} On May 29, 2025, SCJFS filed a motion for permanent custody of J.L. The motion outlined the issues remaining with Mother and Father, including - Mother is currently serving a three-year prison sentence for child endangering after physically abusing J.L.'s sibling; J.L.'s sibling was placed in the permanent custody of SCJFS; Father was sentenced to three years in prison for burglary and obstruction of official business; Father's scheduled release date is February of 2027; and Father has never visited the child.

{¶9} Prior to the hearing on SCJFS' motion for permanent custody, Father filed a motion to extend temporary custody.

{¶10} On September 9, 2025, the trial court conducted a trial on SCJFS' motion for permanent custody. The following testimony was adduced at the September 9th trial.

{¶11} Hannah Thomas ("Thomas") is the caseworker assigned to J.L. Thomas testified that J.L. has been in the temporary custody of the agency since October 1, 2024. Thomas confirmed that the court conducted regular review hearings and found the agency made reasonable efforts to finalize permanency planning for the child.

{¶12} Thomas testified to Father's case plan and his progress on the plan. Father is currently incarcerated at Richland Correctional Institution after being convicted of burglary and obstruction of justice. His earliest release date is February of 2027. Father's case plan objectives included completing a Lighthouse Parenting Assessment, and a drug and alcohol assessment through an agency provider. However, since Father was arrested in February of 2025, he has been unable to complete any case plan services. Thomas testified that Father has a history with the agency, as another child was removed from Father's care in 2014 due to drug use and homelessness. Father was unable to complete the case plan with that child because he was arrested for arson and sentenced to four years in prison.

{¶13} Thomas testified that, even if Father were to be released from prison tomorrow, he would still have to complete extensive case plan services. Thomas stated there would not be time for Father to complete those services. Thomas concluded that Father cannot safely provide care and support for J.L., and Father has not done anything to reduce the risk he poses to J.L.

{¶14} Father has never visited the child. When Father established paternity of the child in January, the agency was attempting to set up visits with him; however, Father was arrested and was unable to start visitation. Thomas confirmed that Father has not seen, or had any contact with, J.L. for a period in excess of ninety days.

{¶15} On cross-examination, Thomas testified that she sent at least three letters in the last six months to Father while he has been in Richland County Correctional Institution. These letters contained case plan updates, case review information, and her contact information. Father never contacted Thomas after she sent the letters. Thomas

visited Father while he was in the Stark County Jail prior to being convicted and discussed case plan services with him. Thomas testified Father never informed her of any parenting classes available in prison. However, the agency requires parents, especially parents who have a history with the agency, to have a parenting assessment completed locally at Lighthouse. Thomas understood that Father was able to apply for judicial release in one month from the date of the permanent custody hearing. Despite this timing, Thomas does not believe Father would have sufficient time to complete case plan services.

{¶16} Father testified that he is eligible to file a motion for judicial release in one month. If the sentencing court grants his motion for judicial release, Father would engage in case plan services and visit with J.L. He believes it would be in the best interest of J.L. for him to engage in case plan services after his release from prison.

{¶17} Thomas testified during the best interest portion of the trial. J.L. is developmentally on target. J.L. has some medical issues from a dislocated hip with which she was born. The foster parents are taking care of these medical issues. J.L. has been in her current foster home since removal and is placed with her biological sibling. Thomas stated J.L. is very bonded to her foster parents and her sibling. The foster parents seek to adopt J.L. Thomas testified there is no bond between J.L. and Father, because Father has never met J.L. Thomas testified it is in the best interest of J.L. for permanent custody to be granted to SCJFS.

{¶18} Father testified that he believes it is in J.L.'s best interest to build a bond with him and his family.

{¶19} The GAL testified that J.L. is extremely bonded to the foster parents and to her sibling and, further, that is in the best interest of J.L. for permanent custody to be granted to SCJFS.

{¶20} On September 10, 2025, the trial court issued a judgment entry containing findings of fact and conclusions of law. The trial court found Father abandoned the child, and, notwithstanding reasonable case planning and diligent efforts by the agency to assist Father with remedying the problems that initially caused the child to be placed outside the home, Father failed continuously and repeatedly to remedy the conditions causing the child to be placed outside the home.

{¶21} Accordingly, the trial court found, by clear and convincing evidence, that J.L. cannot be placed with Father within a reasonable time and should not be placed with Father within a reasonable time. Further, the trial court found it is in the best interest of J.L. for permanent custody to be granted to SCJFS.

{¶22} Father appeals the September 10, 2025, judgment entry of the Stark County Court of Common Pleas, Juvenile Division, and assigns the following as error:

{¶23} "I. THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY TO THE STARK COUNTY DEPARTMENT JOB AND FAMILY SERVICES (SCDJFS) AS SCDJFS FAILED TO SHOW BY CLEAR AND CONVINCING EVIDENCE THAT GROUNDS EXISTED FOR PERMANENT CUSTODY AND SUCH DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶24} "II. THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY TO STARK COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES (SCDJFS) AS SCDJFS FAILED TO SHOW BY CLEAR AND CONVINCING EVIDENCE THAT IT IS IN

THE BEST INTERESTS OF THE MINOR CHILD TO GRANT PERMANENT CUSTODY AND SUCH DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

*Permanent Custody*

{¶25} "[T]he right to raise a child is an 'essential' and 'basic' civil right." *In re Murray*, 52 Ohio St.3d 155, 157 (1990), quoting *Stanley v. Illinois*, 405 U.S. 645 (1972). An award of permanent custody must be based on clear and convincing evidence. R.C. 2151.414(B)(1).

{¶26} Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 477 (1954). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Id.* If some competent and credible evidence going to all the essential elements of the case supports the trial court's judgment, an appellate court must affirm the judgment and not substitute its judgment for that of the trial court. *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279 (1978).

{¶27} Issues relating to the credibility of witnesses and the weight to be given to the evidence are primarily for the trier of fact. *Seasons Coal Co., Inc., v. Cleveland*, 10 Ohio St.3d 77 (1984). Deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger*, 77 Ohio St.3d 415, 419 (1997).

{¶28} R.C. 2151.414 sets forth guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice of the filing of a motion for permanent custody of a child by a public children services agency.

{¶29} Following the hearing, R.C. 2151.414(B) authorizes the court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply:

(a) the child is not abandoned or orphaned, has not been in the temporary custody of the children services agencies for twelve or more months of a consecutive twenty-two month period, and the child cannot be placed either of the child's parents within a reasonable time or should not be placed with the child's parents;

(b) the child is abandoned;

(c) the child is orphaned and there are no relatives of the child who are able to take permanent custody;

(d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period; or

(e) the child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

{¶30} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, a trial court will usually determine whether one of the circumstances delineated in R.C. 2151.414(B)(1)(a) through (e) is present before proceeding to a determination regarding the best interest of the child. In this case, as to Father, the trial court made a finding pursuant to R.C. 2151.414(B)(1)(a) (reasonable time) and R.C. 2151.414(B)(1)(b) (abandonment).

*Manifest Weight*

{¶31} In both of his assignments of error, Father argues the trial court's decision was against the manifest weight of the evidence. The standard of review for manifest weight in a civil case is identical to the standard in a criminal case - a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in evidence, the jury [or finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction [or decision] must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).

{¶32} Because the finder of fact is in the best position to weigh the credibility of the witnesses and observe their demeanor, a reviewing court will always be mindful of the presumption in favor of the trial court's factual findings. *Eastley v. Volkman*, 2012-Ohio-2179.

I.

*Reasonable Time*

{¶33} In his first assignment of error, Father contends the trial court's determination that J.L. could not or should not be placed with him in a reasonable time to be against the manifest weight of the evidence.

{¶34} Pursuant to R.C. 2151.414(E), the trial court must consider all relevant evidence before determining the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. The statute also specifically provides that if the trial court determines, by clear and convincing evidence, at a hearing that one or more of the factors listed in (1)-(15) exist, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. The existence of one factor alone will support a finding that the child cannot be placed with the parent within a reasonable time. *See In re William S.*, 75 Ohio St.3d 95 (1996). The trial judge in this case relied on two of these factors: R.C. 2151.414(E)(1) and (E)(10).

{¶35} R.C. 2151.414(E)(1) applies when "notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home." In making such a determination, "the court shall consider parental utilization of medical, psychiatric, psychological, and other social rehabilitative services and material resources that were made available to the parents for

the purpose of changing parental conduct to allow them to resume and maintain parental duties." *Id.*

### R.C. 2151.414(E)(1) – Failure to Remedy

{¶36} We find clear and convincing evidence in the record that R.C. 2151.414(E)(1) applies because Father failed to substantially remedy the conditions that caused J.L. to be placed into the custody of SCJFS, and that Father is unable to provide an adequate permanent home for J.L.

{¶37} As soon as paternity was established for Father, SCJFS provided Father with a case plan that outlined the steps he needed to complete to be reunited with J.L. However, Father was quickly arrested. Thomas discussed the potential ways in which Father could complete his case plan while he was locally incarcerated. However, once Father was transferred to prison, SCJFS letters sent to Father went unanswered.

{¶38} Father contends that since his counsel will soon be able to file a motion for judicial release and because he would immediately be willing to work on case plan services, the trial court's finding that J.L. cannot or should not be placed with him within a reasonable time is against the manifest weight of the evidence. We disagree.

{¶39} The first date that Father is eligible to file a motion for judicial release is a month after the permanent custody hearing. The trial court judge in the underlying criminal case has discretion to deny or grant the motion. To be sure, judicial release is certainly not guaranteed. Further, Thomas testified that, even if Father were to be judicially released, Father would not have sufficient time to complete his case plan services, particularly given his criminal history and his history with SCJFS.

**{¶40}** Father was unable to make any progress on his case plan due to his incarceration, and will be unable to do so until his release date. Father's own actions led to his incarceration, thus demonstrating Father's unwillingness to provide an adequate permanent home for J.L. Father's incarceration has prevented him from caring for J.L. and from learning how to care for J.L. Thomas' testimony established that Father will not be able to care for J.L. within a reasonable time, if ever, and, further, that Father has no bond with J.L. because he has never met her or had any contact with her. Thomas concluded that Father cannot provide safe care and support for J.L., and Father has not done anything to reduce the risks he poses to J.L.

**{¶41}** While Father advocated for an extension of time, waiting for Father to be released from prison to begin and substantially complete a case plan, learn how to care for J.L., and reunify with J.L., would take this matter past its sunset date. *In re O.S.*, 2025-Ohio-4867, ¶ 12 (5th Dist.). As noted above, even if Father is judicially released from prison when first eligible, he would still not be able to substantially complete a case plan given the extensive services required on his case plan due to his criminal history and given the fact that he previously had a child removed from his care by SCJFS.

**{¶42}** We find that clear and convincing evidence was presented to the trial court that J.L. could not be placed with Father within a reasonable period of time because he did not remedy the conditions that caused J.L.'s initial removal, and Father could not provide a permanent home for J.L.

### *R.C. 2151.414(E)(10) - Abandonment*

**{¶43}** We also find clear and convincing evidence in the record to support the trial court's determination that Father abandoned J.L. A child is presumed abandoned when

the child's parent "ha[s] failed to visit or maintain contact with the child for more than ninety days, regardless of whether the parents resume contact with the child after that period of ninety days." R.C. 2151.011(C).

{¶44} The evidence shows that Father never met J.L. Father was added to the case plan after paternity was established. However, very quickly after his case plan was established, Father was arrested and was ultimately sent to prison. Father was locally incarcerated from February of 2025 to May of 2025, and has been in prison since May of 2025. He did not have any contact with J.L. while he was locally incarcerated or since he has been imprisoned, in total a period of more than ninety days. Father was therefore presumed to have abandoned J.L., and it became his burden to rebut that presumption pursuant to R.C. 2151.011(C).

{¶45} Father argues he rebutted the abandonment presumption because his incarceration prevented him from having contact with J.L. "Incarceration, however, does not rebut the presumption of abandonment." *In re M.A.*, 2024-Ohio-3432, ¶ 26 (5th Dist.), citing *Matter of M.G.*, 2023-Ohio-696, ¶ 48 (5th Dist.).

*R.C. 2151.414(B)(1)(b) - Abandonment*

{¶46} Father also challenges the trial court's finding pursuant to R.C. 2151.414(B)(1)(b) that he abandoned J.L. As detailed above, there is clear and convincing evidence to support the trial court's determination that Father abandoned J.L.

{¶47} Father's first assignment of error is overruled.

II.

{¶48} In his second assignment of error, Father contends the trial court's determination that the best interest of the child would be served by granting permanent

custody to SCJFS is against the manifest weight of the evidence. We disagree. Father points to the fact that he desires to complete case plan services, and his testimony that he believes it is in the best interest of the child to be placed with family.

{¶49} We have frequently noted, "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of the child should be accorded the utmost respect, given the nature of the proceeding and the impact that court's determination will have on the lives of the parties concerned." *In re Mauzy Children*, 2000 WL 1700073, * 3 (5th Dist. November 13, 2000), citing *In re Awkal*, 95 Ohio App.3d 309, 316 (8th Dist. 1994).

{¶50} In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents, and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; (4) the child's need for a legally secure placement and whether that type of placement can be achieved without a grant of permanent custody; and (5) whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶51} The court must consider all of the elements in R.C. 2151.414(D), as well as other relevant factors. There is not one element that is given greater weight than the others pursuant to the statute. *In re Schaefer*, 2006-Ohio-5513. *In re Schaefer* made it clear that a trial court's statutory duty, when determining whether it is in the best interest

of a child to grant permanent custody to an agency, does not include finding by clear and convincing evidence that no suitable relative was available for placement. *Id.* R.C. 2151.414 "requires the court to find the best option for the child once a determination has been made pursuant to R.C. 2151.414(B)(1)(a) through (d). The statute does not make the availability of a placement that would not require a termination of parental rights an all-controlling factor. The statute does not even require the court to weigh that factor more heavily than others." *Id.* at ¶ 64.

{¶52} The focus on the "best interest" determination is upon the child, not the parent, as R.C. 2151.414(C) specifically prohibits the court from considering the effect a grant of permanent custody would have upon the parents. *In re Awkal*, 95 Ohio App.3d 309, 316 (8th Dist. 1994).

{¶53} We find the trial court did not commit error in finding that granting permanent custody to SCJFS is in the best interest of the child.

{¶54} Thomas testified it is in the best interest of J.L. for permanent custody to be granted to SCJFS. J.L. is happy at her current foster home and is bonded with the family. J.L. is living with her biological sibling, who she is also bonded with. The GAL testified that J.L. is extremely bonded to her foster family and sibling, and that it is in the best interest of J.L. for permanent custody to be granted to SCJFS.

{¶55} We find the trial court properly considered and weighed the factors in R.C. 2151.414(D) and the trial court's conclusion that the granting of permanent custody to SCJFS is in the best interest of the child is supported by competent and credible evidence. Further, the trial court did not lose its way and create a manifest miscarriage of justice

such that the decision must be reversed and a new trial ordered.  Father's second assignment of error is overruled.

{¶56}  Based on the foregoing, Father's assignments of error are overruled.

For the reasons stated in our Opinion, the judgment of the Stark County Court of Common Pleas, Juvenile Division,  is affirmed.

Costs to Appellant/Father, J.S.L.

By: Popham, J.

Hoffman, P.J. and

Montgomery, J., concur